UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

HOWARD ELLIS, JR.,

        Plaintiff,

   -vs-

CITY OF ELMIRA, ELMIRA POLICE
DEPARTMENT, and JUSTIN B. FARWELL,

        Defendants.

**DECISION and ORDER**
**No. 6:14-cv-06666(MAT)**

─────────────────────────────────

## I. Introduction

Howard Ellis, Jr. ("Plaintiff"), through retained counsel, instituted this action pursuant to 42 U.S.C. § 1983 ("§ 1983") against defendants City of Elmira ("the City"), Elmira Police Department ("EPD"), and Justin B. Farwell ("Officer Farwell") (collectively, "Defendants"), alleging various causes of action arising out of his arrest for disorderly conduct and resisting arrest on August 31, 2013. For the reasons discussed below, Defendants' motion for summary judgment is granted, and the complaint is dismissed.

## II. Factual Background

Unless otherwise noted, the following facts are undisputed.

Plaintiff, accompanied by his wife, Jessica Ellis ("Mrs. Ellis"), and their friend, George Fields, IV ("Fields"), arrived at the Boar's Nest Pub ("Boar's Nest"), located on Erie Street in Elmira, around 6:30 p.m. on August 31, 2013. Prior to that, he had been "hanging out" with a friend from about 11 a.m. to 5:30 p.m. and had consumed about three to four beers. Plaintiff estimates that over the course of the evening at the Boar's Nest, he had about two or three cocktails consisting of Tanqueray gin and 7-Up soda.

John Canestaro, III ("Canestaro"), a patron who was sitting at the bar, observed Plaintiff strike his wife. Jessica Shea ("Shea"), who testified that she was good friends with Mrs. Ellis and was at the Boar's Nest with her and Plaintiff that night, also observed Plaintiff hit his wife with an open-hand, knocking her down. According to Shea, she approached Plaintiff and tried to talk to him, but he punched her in the face. Canestaro testified that he saw Plaintiff shove and strike Shea. When Canestaro walked over and attempted to intervene, Plaintiff struck him as well. Plaintiff said that he had

never met Shea before that evening and denies that he struck either his wife or Shea or Canestaro.

The parties agree that around 11:30 p.m., a fight erupted between Mrs. Ellis and Shea. Someone called 911, and Officer Farwell was dispatched to the Boar's Nest in response to a "fight in progress." As he approached the outside of the bar, Officer Farwell could hear a disturbance going on inside. Officer Farwell then observed two white females (Mrs. Ellis and Shea) fall out the front door of the Boar's Nest, roll down the steps, and come to a stop on the sidewalk. The women were accompanied by Plaintiff.

Shea and Mrs. Ellis were separated, and Officer Farwell began interviewing them. EPD Officer William Goodwin ("Officer Goodwin") and EPD Officer Thomas Marsh ("Officer Marsh"), who are not named as defendants in this action, arrived shortly thereafter to assist Officer Farwell.

According to Officer Farwell, Plaintiff was being loud and yelling at patrons who were coming out of the bar. Plaintiff states that he simply was trying to

ascertain if his wife was all right. Officer Farwell asserts that despite being warned repeatedly, Plaintiff continued to interrupt the police investigation and act disruptively. Officer Farwell asked Officer Goodwin and Officer Marsh to arrest Plaintiff. Officer Goodwin and Officer Marsh advised Plaintiff that he was under arrest and attempted to effect the arrest.

Plaintiff testified that he was not interfering or yelling at the police or anyone else. Instead, he was walking over to see if his wife was okay when a man he had met inside the bar as a friend of a friend (presumably Canestaro) told one of the officers on the scene that Plaintiff had hit him. Plaintiff said something along the lines of, "I didn't f'g hit you. If you want me to, I will." At that point, Plaintiff recalled, the police took him and threw him against the patrol car and then threw him to the ground, and "all hell broke loose." Plaintiff was unable to describe any of the officers or how many were on top of him.

Officer Goodwin, Officer Farwell, and Officer Marsh testified that Plaintiff was actively resisting the

attempt to place his left wrist into handcuffs by turning his body away and pulling his left arm away. Plaintiff's friend, Fields asserts that Plaintiff was trying to comply. Fields told the police that Plaintiff's "not fighting. He's not resisting." Plaintiff testified that

Officer Marsh states that after Plaintiff evaded being handcuffed, Plaintiff then grabbed the officer's left shoulder with his right hand. Officer Goodwin and Officer Marsh then took Plaintiff to the ground using a "blanketing" technique. Once Plaintiff was on the ground, Officer Marsh and Officer Goodwin assert, Plaintiff continued to disobey their commands to stop resisting and release his hands. Officer Farwell likewise asserts that Plaintiff continued to struggle Officer Goodwin and Officer Marsh and would not allow Officer Goodwin and Officer Marsh to gain control of his arms or hands. According to Plaintiff, his hands were trapped under his body due to the way he was being held by the officers.

During the struggle, Plaintiff claims, an unnamed officer was "tweaking" his foot. Mark Paulo ("Paulo"), an acquaintance of Plaintiff's who observed the incident,

testified that the unidentified officer had one hand on Plaintiff's heel and one hand on his toes, and was twisting Plaintiff's foot. Paulo heard Plaintiff saying to the officers, "I got a bad back." According to Paulo, the officers had Plaintiff on the ground face first," and Plaintiff "wasn't resisting. . . . They had him down there pretty good." Paulo stated that one officer (who has not been identified) had a hold of Plaintiff's heel and toes and was performing "like a leverage move," and "that's when [he] seen [sic] that they had him handcuffed." Paulo testified, "[T]hey broke his leg. I heard it as plain as day." The break, according to Paulo, occurred when "the cop was tweaking his foot," "kind of holding him down pushing his feet back towards his rear and his lower back, and twisting the foot to hold him down." Paulo "heard it snap," describing it as the sound of an arrow penetrating a deer's rib cage.

Officer Goodwin, on the other hand, testified that Plaintiff was struggling and trying to push himself up on his hands and roll himself away from the officers, so Officer Goodwin was holding his lower legs to restrict

his movements. Officer Marsh and Officer Farwell were attempting to remove both of Plaintiff's hands from underneath his body and secure them into handcuffs. Officer Goodwin and Officer Farwell testified that since Plaintiff had not been frisked, they did not know if he had a weapon; likewise, they did not know if he was intoxicated. Officer Farwell testified he delivered closed hand strikes to Plaintiff's shoulder blades and back in an attempt to gain control of Plaintiff's arms. This was unsuccessful because, according to Officer Farwell, Plaintiff kept his hands underneath him. Plaintiff, however, contends that the officers had his right hand cuffed but he still was unable to free his left hand because of the weight of the officers on top of him. When the strikes did not work, Officer Goodwin testified, he deployed his Taser in "dry stun" mode. Plaintiff says he was Tased "once or twice." At that time, Officer Goodwin testified, Plaintiff removed one arm from under his body but the other officers could not get his right arm. Officer Goodwin told him to give them his arm or he was going to get Tased again, at which

point he complied and put his hands behind his back. Plaintiff complied and put his hands behind his back to be handcuffed.

Plaintiff testified that after he had been handcuffed, the officers stood him up and walked him to the car. That is when he noticed a "sharp, tingling" sensation in his ankle and he thought the Taser was still in him. Officer Farwell transported Plaintiff to EPD headquarters. During the trip, Plaintiff complained of pain in his right ankle and leg but not anywhere else. Plaintiff was able to get out of the patrol car and walk into the station on his own. While at EPD headquarters, Officer Goodwin took photographs of Plaintiff, who was still complaining of pain and swelling in his ankle. Plaintiff then taken by ambulance to Arnot-Ogden Hospital.

Plaintiff sustained a displaced fracture of his right ankle. He underwent surgical stabilization of the ankle and remained in the hospital for three or four days. He ultimately was able to return to his work as a laborer.

Officer Farwell subsequently filed an information charging Plaintiff with resisting arrest and disorderly conduct. Plaintiff pleaded guilty to the charge of disorderly conduct.

The complaint names only Officer Farwell, the City, and the EPD as defendants. It enumerates five causes of action against all "Defendants" and does not single out any particular defendant. Although the complaint's factual averments refer to Officer Farwell acting with "other members" or "other officers" of the EPD, the complaint does not mention or identify these "other members" or "other officers" when setting forth the five causes of action, which refer only to "Defendants": (1) retaliation under the First Amendment for Plaintiff's exercise of free speech (Complaint ¶¶ 23-25); (2) false arrest/unreasonable seizure based on the arrest of Plaintiff for disorderly conduct (*Id.* ¶¶ 26-27); (3) unlawful imprisonment based on the arrest for disorderly conduct (*Id.* ¶¶ 28-29); (4) excessive use of force (*Id.* ¶¶ 34-35); and (5) malicious prosecution (*Id.* ¶¶ 37-39).

The parties have completed discovery. Defendants have moved for summary judgment dismissing the Complaint. Plaintiff filed a memorandum of law in opposition as well as an affidavit attaching portions of various deposition transcripts and Plaintiff's medical records. Defendants filed a reply brief.

## III.     Applicable Legal Principles

### A.     Summary Judgment Standard

Federal Rule of Civil Procedure ("F.R.C.P.") 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**B.  42 U.S.C. § 1983**

"To state a valid claim under 42 U.S.C. § 1983 [("§ 1983")], the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir. 1994)). Furthermore, the plaintiff must demonstrate that each defendant personally participated in the deprivation of his constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit[,]. . . masters do not answer for the torts of their servants[, and] . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). In other words, to warrant relief under

§ 1983, the plaintiff must prove that each named defendant individually committed some action or omission that violated the plaintiff's federal rights. *See id.* at 676.

## IV. Discussion

### A. The First Amendment Retaliation Claims Have Been Abandoned

Plaintiff alleges that while outside the Boar's Nest, Officer Farwell and "other members" of the EPD approached him and directed him to stop talking, and then pushed him to the ground, thereby violating his First Amendment rights. Defendants argue that the First Amendment retaliation claims must be dismissed because, *inter alia*, they have been abandoned. Defendants correctly note that Plaintiff has not presented any argument in opposition to Defendants' motion for summary judgment on these claims.

The Second Circuit has "held that when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'"

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d
128, 143 (2d Cir. 2016) (quoting *Jackson v. Federal
Express*, 766 F.3d 189, 195 (2d Cir. 2014); footnote
omitted). Here, Plaintiff unequivocally moved for
dismissal of all counts of the Complaint. Therefore, it
is "appropriate" to infer from [Defendants'] partial
opposition that relevant claims or defenses that are not
defended have been abandoned." *Jackson*, 766 F.3d at 196,
198. Accordingly, for the foregoing reasons, the first
cause of action for retaliation is dismissed, and the EPD
is dismissed as a defendant.

## B. The § 1983 Claims Against the EPD Fail as a Matter of Law

Defendants contend that the § 1983 claims asserted
against the EPD must be dismissed because, *inter alia*,
they fail as a matter of law. As Defendants note, the EPD
is an administrative arm of the City. It is well settled
that "[u]nder New York law, departments that are merely
administrative arms of a municipality do not have a legal
identity separate and apart from the municipality and,
therefore, cannot sue or be sued. *Davis v. Lynbrook*

*Police Dep't*, 224 F. Supp.2d 463, 477 (E.D.N.Y. 2002) (collecting cases). Therefore, the complaint must be dismissed as against the EPD.

**C. The Claims for False Arrest, Unlawful Imprisonment, and Malicious Prosecution Fail as a Matter of Law**

### 1. False Arrest and Unlawful Imprisonment

"Under New York law, false arrest and false [or unlawful] imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983." *Hershey v. Goldstein*, 938 F. Supp.2d 491, 515 (S.D.N.Y. 2013) (citing *Dotson v. Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *7 (S.D.N.Y. Mar. 26, 2012) (collecting cases)). To establish a claim for false arrest under § 1983, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Thus, to make out a *prima facie* claim of false arrest (and unlawful imprisonment), a plaintiff must show that (1) the defendants intentionally confined him; (2) he was conscious of the

confinement; (3) he did not consent to the confinement; and (4) the confinement was not "otherwise privileged." *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003).

Here, Plaintiff pleaded guilty to the charge of disorderly conduct on which he was arrested. A criminal conviction is conclusive evidence of probable cause for an arrest, establishing justification for the confinement. *Lovington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999). "Because his plea and conviction establish probable cause for his arrest, rendering it privileged, [Plaintiff] cannot state a claim for false arrest." *Johnson v. Pugh*, No. 11-CV-385 RRM MDG, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (citing *Corbett v. Dwyer*, 345 F. Supp.2d 237, 241 (N.D.N.Y. 2004) (dismissing a § 1983 false arrest claim after plaintiff pleaded guilty and was convicted on underlying criminal charges); *Papeskov v. Brown*, No. 97–CV–5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (holding that a guilty plea, even to a lesser charge than that for which plaintiff was arrested, bars a § 1983 claim for false arrest); *Burton v. City of N.Y.*, No. 97–CV–202, 1997 WL

793105, at *1 (E.D.N.Y. Nov. 28, 1997) (holding that plaintiff's guilty plea bars claim of false arrest); *Johnston v. Town of Greece*, 983 F. Supp. 348, 359 (W.D.N.Y. 997) (dismissing plaintiff's false arrest claim because he pleaded guilty to the crime for which he was arrested)). Accordingly, the second and third causes of action for false arrest/unreasonable seizure and unlawful imprisonment, respectively, are dismissed as a matter of law.

## 2. Malicious Prosecution

"To state a claim . . . for malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F. 3d 106, 109 (2d Cir. 2009) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). "[A] prosecution is only deemed to terminate 'in favor of the accused'" for purposes a false imprisonment claim "if 'its final disposition is such as to indicate the

innocence of the accused.'" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999) (quoting *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998)). And, "[i]f the outcome of a criminal case 'was the result of a compromise to which the accused agreed, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim.'" *Posr*, 180 F.3d at 418 (quoting *Murphy*, 118 F.3d at 949) (ellipsis in original)).

Because Plaintiff actually pleaded guilty to disorderly conduct following his arrest, as noted above, his malicious prosecution claim fails as a matter of law. *See*, *e.g.*, *Horvath v. City of N.Y.*, No. 12 CV 6005 RJD JMA, 2015 WL 1757759, at *4 (E.D.N.Y. Apr. 17, 2015) (finding that plaintiff's guilty plea barred malicious prosecution claims because it precluded a finding of a termination of the proceeding in his favor) (citing, *inter alia*, *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir.2004) ("A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the

accused."); *Williams v. Young*, 769 F. Supp.2d 594, 603 (S.D.N.Y. 2011) (a "guilty plea pursuant to a plea bargain" means a "proceeding did not terminate in [plaintiff's] favor")). Accordingly, the fifth cause of action for malicious prosecution is dismissed as a matter of law.

### D. The Excessive Force Claim Against Officer Farwell Fails as a Matter of Law

#### 1. Overview of Plaintiff's Allegations

In his Complaint, Plaintiff accuses unnamed EPD officers and Officer Farwell of grabbing him and pushing him to the ground (Complaint ¶ 14); tackling him and pressing him against the ground (*Id.* ¶ 15); punching, kicking, and stepping on him (*Id.* ¶ 17); and using a Taser on him (*Id.* ¶ 18). Nowhere in the Complaint does Plaintiff attribute any of these actions to Officer Farwell or any of the unnamed officers; Plaintiff simply refers to "Defendants" (which the Complaint defines as Officer Farwell, the City, and the EPD).

Plaintiff, in his opposition brief, focuses on the actions of the unnamed EPD officers as a group but fails

to identify how the only named defendant, Officer
Farwell, used excessive force. Defendants argue that
because there is no testimony or evidence that rebuts
Officer Farwell's contemporaneous report, deposition
testimony, and supporting affidavit detailing his limited
use of force, there is no evidence that he used excessive
force. Alternatively, Defendants argue, Officer Farwell
is entitled to qualified immunity with regard to the
discretionary actions he took on the night of the
incident.

### 2. General Legal Principles

#### a. Fourth Amendment's Prohibition Against Unreasonable Force

"The Fourth Amendment prohibits the use of
unreasonable and therefore excessive force by a police
officer in the course of effecting an arrest." *Tracy v.
Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham
v. Connor*, 490 U.S. 386, 395 (1989)). "The Fourth
Amendment test of reasonableness 'is one of objective
reasonableness.'" *Bryant v. City of New York*, 404 F.3d
128, 136 (2d Cir. 2005) (quoting *Graham*, 490 U.S. at

399). Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). The reasonableness inquiry must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The pertinent question for the fact-finder is "whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty Am.*, 361 F.3d at 123. Relevant factors to consider in determining the reasonableness of a state actor's particular use of force include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

While the excessive force inquiry undoubtedly is fact-specific, "[c]ourts may decide excessive force claims. . . on motions for summary judgment." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp.2d 575, 593 (S.D.N.Y. 2013) (citing *Ferraresso v. Town of Granby*, 646 F. Supp.2d 296, 306 (D. Conn. 2009) ("While reasonableness is traditionally a question of fact for the jury, 'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'") (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)); other citation omitted).

## b. Qualified Immunity in the Excessive Force Context

Where a police officer is sued in his or her individual capacity for alleged rights violations, the officer is entitled to qualified immunity with respect to certain discretionary actions. *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (citations omitted). Such an officer is immune from suit, and by extension, from civil

liability, if either (1) "his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" *id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), or (2) "it was 'objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'" *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal citation and quotations omitted))

Because the clearly established Fourth Amendment excessive force inquiry also hinges on a determination of objective reasonableness, "it appears that at least in some excessive force cases the . . . analysis ultimately converge[s] on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 n. 4 (2d Cir. 2003). "[W]hen the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest[,]" *Ricciuti v. N.Y.C. Transit*

*Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), it is appropriate for the court to grant summary judgment on the basis of qualified immunity.

### 3. The Material Facts Are Undisputed as to the Force Personally Applied by Officer Farwell

Officer Farwell is the only individually named defendant in this action. As discussed further below, the Court finds that Plaintiff has not demonstrated that there is a genuine issue of material fact as to the force that Officer Farwell personally used against Plaintiff during the arrest.

Western District of New York Local Rule of Civil Procedure 56(a)(1) ("L.R. 56(a)(1)") sets forth the required contents and form of a statement of facts in support of summary judgment motion. Defendants, in accordance with L.R. 56(a)(1), have set forth the material and essential facts as to which they contend there is no material dispute, citing admissible evidence. In his counterstatement of facts, Plaintiff has not specifically addressed or controverted any of the factual averments regarding the sole named individual defendant's

actions or omissions during the struggle prior to his being handcuffed and placed in the patrol car. In particular, Plaintiff has not controverted Officer Farwell's statements that Officer Farwell was not positioned near Plaintiff's legs ankles, or feet; Officer Farwell did not make any contact with Plaintiff's legs, ankles, or feet; and Officer Farwell did not twist or manipulate Plaintiff's legs, ankles, or feet. *Compare* Defendants' Statement of Facts ("Defs.' SOF") ¶¶ 46–60 *with* Plaintiff's Statement of Facts ("Pl.'s SOF") ¶ 12 (with regard to Defs.' SOF, ¶ 46, stating only, "see above"); *id.* ¶ 13 (with regard to Defs.' SOF ¶ 47 (stating that Paulo said that "[t]he officer was tweaking [Plaintiff's] foot"); *id.* ¶ 14 (with regard to Defs.' SOF ¶¶ 48–54, stating only, "see above"); *id.* ¶15 (with regard to Defs.' SOF ¶¶ 55–60, stating only, "see above"). Therefore, the Court finds that the material facts are undisputed that the only force utilized personally by Officer Farwell, based on his testimony and that of non-parties Officers Goodwin and Marsh, was as follows: (1) a "blanketing technique," which involved

Officer Farwell using his body weight on Plaintiff's upper body to immobilize him; and (2) closed hand strikes to Plaintiff's shoulder blades and back in an attempt to gain control of Plaintiff's arms. *See* Defs.' SOF ¶¶ 59-60 (citations omitted).

### 4. The Force Used by Officer Farwell Was Not Unreasonable

The Court now considers whether the force used by Officer Farwell was unreasonable in light of the factors articulated by the Supreme Court, namely, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "Importantly, while summary judgment demands that all facts be construed in the light most favorable to the non-movant, officers themselves may make 'reasonable inferences from the facts they possess at the time of [an alleged violation] based upon their own experiences.'" *Mesa v. City of N.Y.*, No. 09 CIV. 10464 JPO, 2013 WL 31002, at *6-7 (S.D.N.Y. Jan. 3, 2013) (quoting *Cerrone*,

246 F.3d at 203; alteration in original)). "Thus, a movant's fact narrative, though not dispositive, remains relevant to the qualified immunity inquiry at the summary judgment stage." *Id.*

With regard to the seriousness of the crimes, Plaintiff was charged with both resisting arrest and disorderly conduct. Although neither of these are serious offenses under New York law, the remaining factors weigh in favor of finding that Officer Farwell's use of force was not excessive but instead was objectively reasonable.

With regard to whether Plaintiff posed an immediate harm to safety of other citizens or officers, In addition, the Court notes that the situation confronting Officer Farwell when he arrived at the scene was volatile: a late-night barroom brawl between two women, one of whom was Plaintiff's wife, that spilled out on the street and brought with it numerous bar patrons. The potential for both the participants and the spectators to be intoxicated and therefore irrational, or at least, unpredictable, was high. While Officer Farwell was merely trying to interview the women who had been fighting,

Plaintiff was yelling and talking over both Mrs. Ellis, Shea, and the officer. Officer Farwell told him several times to step back, quiet down, and wait his turn, but Plaintiff refused. With regard to the subsequent situation with Plaintiff on the ground, Officer Farwell testified that his fellow officers had not been able to pat-frisk Plaintiff before they all became enmeshed in the scuffle. Officer Farwell recalled that after he instructed Officers Marsh and Goodwin to effectuate the arrest, he saw that all three were on the ground in a struggle. Therefore, when Officer Farwell tried to assist Officers Marsh and Goodwin, no one knew if Plaintiff had a weapon on him. A reasonable jury could find that in light of the facts and circumstances facing the EPD Officers, in light of the information they possessed, including their observations of Plaintiff's behavior, Plaintiff posed an immediate threat to their safety and the safety of others.

With regard to whether Plaintiff was attempting to avoid being arrested, Officer Farwell observed Plaintiff actively refusing to follow Officer Goodwin and Officer

Marsh's orders or to produce his hands to be handcuffed. When Officer Farwell went over to assist Officers Goodwin and Marsh, he heard them telling Plaintiff to give them his hands, yet Officer Farwell observed that Plaintiff's hands remained underneath his body. Plaintiff does not deny that he failed to move his hands behind his back to be handcuffed, asserting that he was physically incapable of doing so due to the weight of the officers on him. Even accepting this excuse as true, a reasonable jury could conclude that Officer Farwell, in the tense and quickly shifting situation confronting him, was not aware of Plaintiff's asserted inability to move his hands behind his back. *Cf.*, *e.g.*, *Jackson v. Tellado*, 236 F. Supp. 3d 636, 660 (E.D.N.Y. 2017) ("The jury's finding that [the defendant officer] believed [the] [p]laintiff was resisting arrest could have been referring to [the] [p]laintiff's inability to pull his arm out from under him, which officers could have interpreted as a refusal to do so."). This factor weighs in favor of finding that Officer Farwell's use of force in an attempt to cause Plaintiff to release his hands for handcuffing was

objectively reasonable. Indeed, the fact that Plaintiff did not release his hands until after he had been Tased by Officer Goodwin further supports the conclusion that the force used by Officer Farwell was not excessive.

Finally, although it is not dispositive, "[t]he degree of injury suffered, to the extent 'it tends to show the amount and type of force used,' is also relevant to [the Court's] excessive force inquiry." *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)). Here, a photograph of Plaintiff's back taken at EPD headquarters after the arrest does not reveal any bruising near his shoulder blades. Plaintiff did not receive any medical treatment for his upper back, and the ambulance records and hospital records show that Plaintiff did not complain of any pain in his upper back. Thus, it is undisputed that Plaintiff sustained no physical injury as a result of Officer Farwell's conduct in performing the blanketing technique and applying closed hand strikes to his shoulder blades. This factor weighs in favor of finding that the force applied by

Officer Farwell was objectively reasonable in light of the facts and circumstances confronting him.[1]

### 5. Alternatively, Officer Farwell Is Entitled to Qualified Immunity

In the alternative, the Court finds that Officer Farwell is entitled to qualified immunity. Given the factors discussed above in Section 3, Officer Farwell would have had no reason to believe objectively that Plaintiff's Fourth Amendment right to be free from excessive force was violated during the encounter outside the Boar's Nest. A reasonable officer in Officer Farwell's position could have believed that the challenged conduct was within the bounds of appropriate police responses. Stated another way, "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context. *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir.2007)

---

[1]

The Court notes that the federal courts uniformly have recognized a theory of "bystander liability" based on a defendant's failure to intervene in § 1983 actions. *E.g.*, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Plaintiff has not pleaded a cause of action for failure-to-intervene or bystander liability against Officer Farwell. Plaintiff "is the master of his complaint and can choose which claims he will pursue in this action and which he chooses not to pursue." *Johnson v. City of Atwater*, No. 116CV01636AWISAB, 2017 WL 1383283, at *4 (E.D. Cal. Apr. 18, 2017). Moreover, Plaintiff is represented by counsel and, therefore, the Court has no occasion to liberally construe the Complaint. *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

("[A]n officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context.") (quoting *Malley*, 475 U.S. at 341)). Therefore, summary judgment on qualified immunity grounds is warranted as to Plaintiff's excessive force claim against Officer Farwell.

### E. The Municipal Liability Claim Against the City Fails as a Matter of Law

Defendants argue that the City is entitled to dismissal from this lawsuit because Plaintiff has only alleged causes of actions under § 1983 based on the conduct of Officer Farwell without any allegations regarding any constitutionally deficient municipal policy or procedure or illegality in the City's the hiring, training, supervision, or retention of its police officers. In his opposition, Plaintiff asserts that the City is not entitled to dismissal under a theory of respondeat superior because it could be liable as the employer of the EPD Officers. However, imposing liability on the basis of a defendant's status as the employer of

a tortfeasor is the essence of respondeat superior. It is well settled that under § 1983, a municipality may not be held liable on a theory of respondeat superior. *Jeffes v. Barnes*, 208, F.3d 49, 57 (2d Cir. 2000) (citation omitted).

"Under Second Circuit case law, a prerequisite to municipal liability under *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978),] is an underlying constitutional violation by a state actor." *Henry-Lee v. City of N.Y.*, 746 F. Supp.2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has explained, "*Monell* does not provide a separate cause of action . . . [but rather] *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Albertelli v. Monroe Cty.*,

No. 09-CV-6039 MAT, 2012 WL 4052399, at *5 (W.D.N.Y. Sept. 13, 2012). Accordingly, the Court dismisses Plaintiff's *Monell* claim against the City.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 35) is granted, and Plaintiff's Complaint (Docket No. 1) is dismissed in its entirety. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    November 19, 2018
          Rochester, New York.